UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-517-BR

BELLSOUTH TELECOMMUNICATIONS, INC.  )
d/b/a AT&T North Carolina,                              )
                                    Plaintiff,           )
                                                         )
              v.                                         )
                                                         )
EDWARD S. FINLEY, JR., CHAIRMAN;        )                    ORDER
LORINZO L. JOYNER,COMMISSIONER; and )
WILLIAM T. CULPEPPER, III,                       )
COMMISSIONER, in their official capacities and )
not as individuals,                                       )
                                                         )
and                                                      )
                                                         )
INTRADO COMMUNICATIONS, INC.,           )
                                    Defendants.          )

        This matter is before the court on cross-motions for summary judgment by all parties.

The motions have been fully briefed and are ripe for disposition.

## I.  BACKGROUND

        Plaintiff BellSouth Telecommunications, Inc. d/b/a AT&T North Carolina ("AT&T") is

an incumbent local exchange carrier ("ILEC") in its authorized service territories in North

Carolina.  Compl. ¶ 9.  Defendant Intrado Communications, Inc. ("Intrado") is certified by the

North Carolina Utilities Commission ("NCUC") as a competing local provider in North

Carolina.   Id. ¶ 12; Intrado's Answer ¶ 12.  The remaining defendants are Commissioners of the

NCUC and are being sued in their official capacities for declaratory and injunctive relief only.

Compl. ¶¶ 10-11.

        At issue here is Intrado's provision of  "Intelligent Emergency Network" service ("911

service"),[1] which is a service that is solely related to 911 emergency telephone calls. Mem. Supp. Intrado's Mot. Summ. J. at 3; Br. Supp. AT&T's Mot. Summ. J. at 3. When an individual ("end user") makes a 911 call, the call is directed to a Public Safety Answering Point ("PSAP"),[2] which most people think of as the 911 operator. Each PSAP serves a defined geographic territory. PSAPs need to obtain service from a 911 system service provider in order to have 911 calls directed and delivered to them. AT&T has traditionally served as the 911 system service provider for PSAPs that handle 911 calls from end users in AT&T's service territory. Intrado is seeking to replace AT&T as the 911 system service provider for those PSAPs in North Carolina. To do that, Intrado needs to interconnect with AT&T so that it can receive 911 calls originated by AT&T's end users and then deliver them to Intrado's PSAP customers. Intrado's Arbitration Pet., DE # 25-1 at 3-7; Br. Supp. AT&T's Mot. Summ. J. at 3.

In 2007, Intrado formally requested interconnection with AT&T. Mem. Supp. Intrado's Mot. Summ. J. at 7. On 21 December 2007, when certain issues remained unresolved, Intrado filed a petition for arbitration with the NCUC pursuant to § 252 of the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 151 et seq. ("the Act"). Id. at n.10; Compl. ¶ 18. After an evidentiary hearing on 13 August 2008, the NCUC issued a Recommended Arbitration Order ("RAO") on 24 April 2009. Compl. ¶¶ 20-21. The parties filed objections, and the NCUC issued a final order on 10 September 2009 ("Arbitration Order"),

---

[1] As used herein, "911 service" includes: (1) basic 911 services, where calls dialed to 911 are transmitted from the service provider's switch to a single geographically appropriate public safety agency, and (2) enhanced 911 or "E911" services, which route 911 calls to a geographically appropriate public safety agency based on the caller's location and also provide the call taker with the caller's call back number or automatic numbering information ("ANI") and location information or automatic location identification ("ALI"). See In re IP-Enabled Servs. & E911 Requirements for IP-Enabled Serv. Providers, 20 FCC Rcd. 10245, 10250-51 ¶¶ 12-13 (2005).

[2] A "PSAP" is a "point that has been designated to receive 911 calls and route them to emergency service personnel." 47 C.F.R. § 20.3.

2

whereby the NCUC ruled on the objections and directed the parties to file interconnection agreements in accordance with the NCUC's rulings. Id. ¶¶ 22, 25. The parties filed their conforming interconnection agreements on 19 October 2009, and the NCUC approved the agreements by order dated 2 November 2009. Id. ¶ 26; see also Intrado's Composite Agreement, DE # 25-76; AT&T's Composite Agreement, DE # 25-79; Order Approving Composite Agreement, DE # 25-83.

AT&T filed this action on 2 December 2009 pursuant to § 252(e)(6) of the Act to request review of the NCUC's determination that Intrado's 911 service qualifies as "telephone exchange service" under the Act. Compl. ¶¶ 1-2. AT&T seeks declaratory and injunctive relief. Id. at 9 (Prayer for Relief).

AT&T, Intrado, and the NCUC all filed cross-motions for summary judgment on 26 April 2010.[3]

## II. DISCUSSION

A. Standard of Review

> Under the . . . Act, the court is to "determine whether a state utility
> commission's arbitration decision 'meets the requirements' of [sections] 251 and
> 252 of the Act." GTE S., Inc. v. Morrison, 199 F.3d 733, 742 (4th Cir. 1999)
> (quoting 47 U.S.C. § 252(e)(6)). The Act, however, contains no particular
> standard of review. Id. at 745. In GTE South, the Fourth Circuit discussed a state
> commission's telecommunications arbitration decision and held that, "[a]bsent a
> statutory command, general standards of judicial review of agency action apply."

---

[3] Intrado informed the court that "[i]ssues similar to those raised by AT&T are currently pending in arbitration proceedings before the Federal Communications Commission ['FCC']." Mem. Supp. Intrado's Mot. Summ. J. at 25; see In re Intrado Commc'ns of VA Inc., 23 FCC Rcd. 17867 (2008). As a result, Intrado claims, "the Court may defer consideration of this case pending the outcome of the FCC proceedings or otherwise refer these issues to the FCC for resolution under the doctrine of primary jurisdiction given that the FCC proceeding will address many of the same questions currently before this Court." Mem. Supp. Intrado's Mot. Summ. J. at 25. However, the FCC recently allowed Intrado's motion to withdraw its petition for arbitration. See In re Intrado Commc'ns of VA Inc., Nos. 08-33; 08-185, 2010 WL 3565589 (F.C.C. Sept. 13, 2010). As a result, the court will not defer ruling on the parties' cross-motions for summary judgment.

Id. "Thus, [the court] review[s] de novo the [NCUC's] interpretations of the . . . Act." Id.; see BellSouth Telecomms., Inc. v. Sanford, 494 F.3d 439, 447-48 (4th Cir. 2007). As for factual findings, the "Act does not require [the court] to sit as a super public utilities commission." GTE S., Inc., 199 F.3d at 745. Rather, a state commission's findings of fact are reviewed under the substantial evidence standard. Id. The Fourth Circuit has described the substantial evidence standard as follows:

> [S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. While substantial evidence is more than a scintilla, it is also less than a preponderance. A court is not free to substitute its judgment for the agency's ...; it must uphold a decision that has substantial support in the record as a whole even if it might have decided differently as an original matter.

AT & T Wireless PCS, Inc. v. City Council of Va. Beach, 155 F.3d 423, 430 (4th Cir. 1998) (quotations omitted) (citations omitted).

Time Warner Cable Info. Servs. (N.C.), LLC v. Duncan, 656 F. Supp. 2d 565, 574-75 (E.D.N.C. 2009) (some alterations in original).[4]

B. Telephone Exchange Service

Intrado argues that AT&T has a duty to interconnect pursuant to 47 U.S.C. § 251(c)(2), so that Intrado can provide its 911 service in areas where AT&T provides local exchange services. Under this section of the Act, an ILEC, such as AT&T, has the duty to interconnect with a requesting telecommunications carrier "for the transmission and routing of telephone exchange service and exchange access." 47 U.S.C. § 251(c)(2)(A).[5] Here, the parties agree that

---

[4] Intrado and the NCUC agree that the court reviews the NCUC's findings of fact under a substantial evidence standard of review. See Mem. Supp. Intrado's Mot. Summ. J. at 9; Mem. Supp. NCUC's Mot. Summ. J. at 7. However, AT&T contends that the arbitrary and capricious standard of review is to be applied to the NCUC's findings of fact. See Br. Supp. AT&T's Mot. Summ. J. at 4. The court finds that application of the substantial evidence standard of review to the NCUC's factual determinations is appropriate. See GTE S., Inc., 199 F.3d at 745. In any event, the Fourth Circuit has noted that "[w]ith respect to review of factfindings, there is no meaningful difference between [the arbitrary and capricious] standard and the substantial evidence standard . . . ." Id. at n.5.

[5] 47 U.S.C. § 251(c)(2) provides in full:
In addition to the duties contained in subsection (b) of this section, each incumbent local exchange carrier has the following duties: . . .

(continued...)

4

there is only one issue to be resolved in this action, which is whether Intrado's 911 service constitutes "telephone exchange service" as defined in the Act.[6] If Intrado's 911 service does not qualify as telephone exchange service, then AT&T has no duty to interconnect with Intrado under the Act.

The Act defines "telephone exchange service" as follows:

> The term "telephone exchange service" means (A) service within a telephone exchange, or within a connected system of telephone exchanges within the same exchange area operated to furnish to subscribers intercommunicating service of the character ordinarily furnished by a single exchange, and which is covered by the exchange service charge, or (B) comparable service provided through a system of switches, transmission equipment, or other facilities (or combination thereof) by which a subscriber can originate and terminate a telecommunications service.

47 U.S.C. § 153(47).

Because 47 U.S.C. § 153(47) provides two different meanings of the term "telephone exchange service" joined by the word "or," Intrado's 911 service constitutes telephone exchange service if it meets the requirements of either part of the definition. The NCUC found that

---

[5](...continued)
(2) Interconnection
The duty to provide, for the facilities and equipment of any requesting telecommunications carrier, interconnection with the local exchange carrier's network –
    (A) for the transmission and routing of telephone exchange service and exchange access;
    (B) at any technically feasible point within the carrier's network;
    (C) that is at least equal in quality to that provided by the local exchange carrier to itself or to any subsidiary, affiliate, or any other party to which the carrier provides interconnection; and
    (D) on rates, terms, and conditions that are just, reasonable, and nondiscriminatory, in accordance with the terms and conditions of the agreement and the requirements of this section and section 252 of this title.

[6] Intrado does not contend that its service constitutes an "exchange access" service. Thus, the only question at issue is whether the service constitutes telephone exchange service under 47 U.S.C. § 251(c)(2)(A). See RAO at 9.

Intrado's 911 service satisfies both part (A) and part (B) of the definition of telephone exchange service. As a result, the NCUC held that AT&T has a duty to interconnect with Intrado under § 251(c)(2) of the Act.

AT&T maintains that Intrado's 911 service does not meet the requirements for either part of the definition of the term "telephone exchange service." The court initially notes that several state utility commissions have ruled on the same issue that is before the court in this case, and the results have been split.[7]

    1. <u>47 U.S.C. § 153(47)(A)</u>

        a. <u>Intercommunicating Service</u>

The court will first address the issue of whether Intrado's 911 service constitutes telephone exchange service under 47 U.S.C. § 153(47)(A). AT&T argues that Intrado's 911 service does not permit intercommunication as required under this section of the Act. The term "intercommunicating service," which is found in 47 U.S.C. § 153(47)(A), is not defined in the Act, and the parties do not dispute this. <u>See</u> Br. Supp. AT&T's Mot. Summ. J. at 14; Mem. Supp. Intrado's Mot. Summ. J. at 16; Mem. Supp. NCUC's Mot. Summ. J. at 10.

In ruling on this issue, the NCUC agreed with the reasoning set forth by the Ohio Public Utilities Commission ("PUC") in a similar proceeding. The Ohio PUC "found that Intrado's 911

---

[7] <u>See</u> <u>In re Commc'ns Venture Corp. D/B/A Indigital Telecom</u>, No. 2009-00438, 2010 WL 1501707 (Ky. Pub. Serv. Comm'n Apr. 9, 2010) (finding that the definition of telephone exchange service was met with respect to 911 service); <u>In re Intrado Commc'ns Inc.</u>, No. 07-1280-TP-ARB, 2009 WL 585861 (Ohio Pub. Utils. Comm'n Mar. 4, 2009) (same); <u>In re Intrado, Inc.</u>, No. 08-0545, 2009 WL 2589163 (Ill. Commerce Comm'n Mar. 17, 2009) (finding that the definition of telephone exchange service was not met with respect to 911 service); <u>In re: Intrado Commc'ns, Inc.</u>, No. 070736-TP, 2008 WL 5381467 (Fla. Pub. Serv. Comm'n Dec. 3, 2008) (same). In addition, the Texas Public Utility Commission initially ruled that Intrado's 911 service does not constitute telephone exchange service. <u>See</u> <u>In re Intrado, Inc.</u>, No. 36185, DE # 28-13 (Tex. Pub. Util. Comm'n Nov. 23, 2009). However, the Texas Public Utility Commission subsequently granted Intrado's motion for reconsideration of the issue. <u>See</u> <u>In re Intrado, Inc.</u>, No. 36176, 2010 WL 489671 (Tex. Pub. Util. Comm'n Feb. 4, 2010). It appears that the Texas case has now been settled. <u>See</u> <u>id.</u>, 2010 WL 3524025 (Tex. Pub. Util. Comm'n Sept. 2, 2010).

service involved intercommunication, albeit limited, but noted that 47 U.S.C. 153(47)(A) 'does not quantify intercommunication. It only requires the existence of intercommunication.'" RAO at 13 (quoting In re Intrado Commc'ns Inc., No. 07-1280-TP-ARB, 2009 WL 585861, at *12 (Ohio Pub. Utils. Comm'n Mar. 4, 2009)). The NCUC also stated that "[i]n construing 47 U.S.C. 153(47), it is important to note that the [Federal Communications Commission ("FCC")] has been expansive in its definition of telephone exchange services." Id. at 12; see also In the Matter of Deployment of Wireline Services Offering Advanced Telecommunications Capability, 15 FCC Rcd. 385, 394-95 ¶ 21 (1999) ("Advanced Services Order"). The NCUC further asserted:

> [T]he FCC has even gone so far as to require local exchange companies "to provide access to 911 databases and interconnection to 911 facilities to all telecommunications carriers, pursuant to sections 251(a) and (c) and section 271(c)(2)(B)(vii) of the Act." The FCC continued: "We expect that this would include all the elements necessary for telecommunications carriers to provide 911/E911 solutions . . . ."

RAO at 12 (quoting In re IP-Enabled Servs. & E911 Requirements for IP-Enabled Serv. Providers, 20 FCC Rcd. 10245, 10267-68 ¶ 38 (2005)). As a result, the NCUC determined that the statutory language of 47 U.S.C. § 153(47) "should be given a liberal interpretation that furthers the purpose of telecommunications competition." Id.

The factor of intercommunication is important because the FCC considers it to be a "key component" of the telephone exchange service definition. Advanced Services Order, 15 FCC Rcd. at 399 ¶ 30. By way of comparison, the FCC has held that xDSL-based advanced services and directory assistance call completion constitute telephone exchange service, but paging service does not. See generally id.; Provision of Directory Listing Information Under the Telecommunications Act of 1934, As Amended, 16 FCC Rcd. 2736 (2001) ("Directory Listing

7

Order"); In the Matters of Implementation of the Local Competition Provisions of the

Telecommunications Act of 1996, 11 FCC Rcd. 19392, 19538 ¶ 330 & n.700 (1996).

Here, AT&T takes issue with the way in which the NCUC defined the term

"intercommunicating service." AT&T insists that the NCUC's definition of this term[8] is

contrary to the interpretation set forth by the FCC in the Directory Listing Order and in the

Advanced Services Order. AT&T asserts that the proper definition of an intercommunicating

service is one that permits a "community of interconnected customers to make calls to one

another." Directory Listing Order, 16 FCC Rcd. at 2745-46 ¶¶ 17, 21; Advanced Services Order,

15 FCC Rcd. at 396 ¶ 23. AT&T cites to additional language from the relevant FCC orders to

support its conclusion that an intercommunicating service must enable a customer to make calls

to "all subscribers" (i.e., "any other subscriber") on the network. Br. Supp. AT&T's Mot.

Summ. J. at 6; Directory Listing Order, 16 FCC Rcd. at 2745 ¶ 17; Advanced Services Order, 15

FCC Rcd. at 394, 396 ¶¶ 20, 24, 25 n.61.

AT&T maintains that Intrado's 911 service cannot meet this definition because the

service only allows a connection "between three specific predetermined points (PSAPs, 911

---

[8] In the RAO, the NCUC referred to Webster's New World Dictionary, Second College Edition (1972), which defines "intercommunicate" as meaning "to communicate with or to each other or one another." RAO at 11. The NCUC then determined that "intercommunication can include a situation in which one person delivers a message to another even if the other person does not or cannot reply." Id. at 12. The NCUC stated its reason for referring to the Webster's New World Dictionary definition. It noted that in the Advanced Services Order, 15 F.C.C. Rcd. at 396 ¶ 23, the FCC stated that the intercommunication requirement is satisfied "as long as it provides customers with the capability of intercommunicating with other subscribers." The NCUC concluded that the FCC's statement was "somewhat unhelpful[] for our immediate purposes," RAO at 11, because the FCC used the word "intercommunicating" in trying to define the term "intercommunication." See NCUC's Reply Mem. at 4. Although the NCUC expressed dissatisfaction with this statement made by the FCC, it is clear from the RAO that the NCUC did not rely exclusively on the dictionary definition of the word "intercommunicate" in determining whether Intrado's 911 service is an intercommunicating service under the Act. Rather, the NCUC summarized the positions of AT&T and Intrado, referenced other state utility commissions' decisions regarding the issue, and thoughtfully examined the FCC's discussions of the meaning of the term "intercommunication" in the relevant agency orders. See RAO at 9-13. As a result, the court finds that the manner in which the NCUC analyzed this issue was proper.

callers, and first responders) . . . ." Br. Supp. AT&T's Mot. Summ. J. at 17. AT&T likens

Intrado's 911 service to a private-line service, which the FCC has determined does not involve

intercommunication. See Advanced Services Order, 15 FCC Rcd. at 397 ¶ 25 ("Customers

subscribing to private line service . . . may communicate only between those specific,

predetermined points set aside for that customer's exclusive use. If a private line customer

wishes to communicate with a second end-point, the customer . . . must order another private

line."). Moreover, AT&T points out that Intrado's PSAP customer can only connect to the other

members of the community, including other PSAPs, if and when a 911 end user places a call to

the PSAP using another carrier's service. AT&T contends that this limited service does not meet

the definition of an intercommunicating service.

 The court disagrees with AT&T's interpretation of the FCC orders and finds that AT&T

has taken statements made by the FCC out of context. For example, AT&T quotes a discrete

fragment of the Advanced Services Order, 15 FCC Rcd. at 394 ¶ 20, to support its position that

an intercommunicating service must enable the customer to make calls to "all subscribers within

a geographic area." Br. Supp. AT&T's Mot. Summ. J. at 6. However, when the sentence is read

as a whole, a significantly different impression is conveyed: "[I]n cases involving voice

communication, the Commission has long interpreted the traditional telephone exchange

definition to refer to 'the provision of individual two-way voice communication by means of a

central switching complex to interconnect all subscribers within a geographic area.'" Advanced

Services Order, 15 FCC Rcd. at 394 ¶ 20 (footnote omitted) (citations omitted). Through the use

of this language and other language in the Directory Listing Order and the Advanced Services

Order, the FCC has equated the term "intercommunication" with two-way communication, as

9

opposed to a one-way transmission. See Directory Listing Order, 16 FCC Rcd. at 2746 ¶ 21 n.59

(citing In the Matter of Gen. Tel. Co. of Cal. (formerly Cal. Water & Tel. Co.), 13 FCC 2d 448,

460 ¶ 24 (1968) ("Manifestly, the phrase [telephone exchange service] is intended primarily to

apply to a telephone or comparable service involving 'intercommunication,' i.e., a two-way

communication, not the one-way transmission of signals . . . .")); Advanced Services Order, 15

FCC Rcd. at 396 ¶ 23 nn.59-60 (same). Thus, in determining whether a telecommunications

service meets the intercommunication requirement, the emphasis is not on whether the service

allows every single subscriber to call every other subscriber on demand, but on whether the

service provides two-way communication.[9]

Here, although Intrado's PSAP customers will mainly be receiving 911 calls from the

public, the 911 service offered by Intrado will in fact allow its PSAP subscribers to communicate

with other PSAP subscribers and with the PSAP customers of AT&T. Intrado's 911 service will

also allow end users to make calls to PSAPs and to communicate with other local emergency

personnel. Intrado's PSAP subscribers will normally engage in two-way voice communications

with anyone that they are connected to in their locality. In this way, Intrado's 911 service will

allow "a community of interconnected customers to make calls to one another . . . . " Advanced

---

[9]AT&T also cites to the Advanced Services Order, 15 FCC Rcd. at 396 ¶ 24, in arguing that a subscriber must be able to call "any other subscriber" on the network in order to meet the intercommunication requirement. Again, this fragment is taken out of context. The FCC used this language in addressing an argument that the xDSL-based advanced services at issue did not permit intercommunication because the service subscribers were required to specify the Internet Service Provider ("ISP") or third-party with whom their computers were connected. The FCC found that "although a customer must designate the ISP or third party to whom his or her high-speed data transmissions are directed, once on the packet-switched network, a customer may rearrange the service to communicate with any other subscriber located on that network through the use of packet-switching technology." Id. This sentence as a whole demonstrates that the FCC was describing how the xDSL-based advanced services functioned. The court does not believe that the FCC intended to express a broad mandate for all future cases in making this descriptive statement. As a result, the court cannot construe this factually specific sentence as imposing a requirement that a subscriber must be able to call "any other subscriber" in order to qualify as an intercommunicating service under 47 U.S.C. § 153(47)(A).

15 FCC Rcd. at 396 ¶ 23. This interconnected community consists of 911 callers, PSAPs and other emergency personnel in the relevant geographic area. See In re Commc'ns Venture Corp. D/B/A Indigital Telecom, No. 2009-00438, 2010 WL 1501707, DE # 32-13, at 13 (Ky. Pub. Serv. Comm'n Apr. 9, 2010); In re Intrado Commc'ns Inc., No. 07-1280-TP-ARB, 2009 WL 1759657, at *4 (Ohio Pub. Utils. Comm'n June 17, 2009) (The Act "does not set limits on the size of the community or the number of interconnected customers. It is, therefore, open whether a community and customers may be more precisely defined.").

Furthermore, the court finds that Intrado's PSAP subscribers will not operate in the narrow, perfunctory manner portrayed by AT&T. Not all of the connections in the community at issue are necessarily predetermined. Depending on the nature of the call and the location of the incident being reported, a PSAP may actively choose to contact a particular police department if a crime is in progress or an EMS dispatcher if medical services are needed. See RAO at 13. Thus, similar to the xDSL-based advanced services at issue in the Advanced Services Order, Intrado's PSAP subscriber "may, with relative ease, designate that his or her traffic be directed to a different [PSAP] or third party." Advanced Services Order, 15 FCC Rcd. at 397 ¶ 25. As a result, AT&T's attempts to analogize Intrado's service to a private-line service are without merit.

Next, AT&T argues that the FCC orders relevant to this case demonstrate that the term "intercommunicating service" necessarily requires a finding of the ability to originate calls. Call origination is expressly set forth as a requirement of Part (B) of the definition of telephone exchange service. See 47 U.S.C. § 153(47)(B). Even though call origination is not mentioned in Part (A), AT&T contends that call origination is implicitly a part of intercommunicating service. See Br. Supp. AT&T's Mot. Summ. J. at 7 & n.8; 11; AT&T's Resp. Defs.' Mots. Summ. J. at

11

13 n.26.  Intrado and the NCUC both insist that call origination is not a requirement under Part (A) of the definition of telephone exchange service.  See Intrado's Mem. Opp'n AT&T's Mot. Summ. J. at 20-21; Intrado's Reply Mem. at 2-3; NCUC's Reply Mem. at 6.

The court finds that call origination is not required under 47 U.S.C. § 153(47)(A).  When Congress set forth the definition of telephone exchange service in Part (B), it employed different language, i.e. "originate and terminate," rather than reiterating the term "intercommunicating service" that is found in Part (A).  "[P]roper weight should be given to the words Congress chose, especially where Congress itself has drawn a distinction in the words it used in the same statute."  Kirkendall v. Dept. of Army, 479 F.3d 830, 857 (Fed. Cir. 2007) (Moore, J., concurring-in-part and dissenting-in-part); see also Sosa v. Alvarez-Machain, 542 U.S. 692, 712 n.9 (2004) (stating that there is a "usual rule that when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended") (citation omitted) (internal quotation marks omitted); Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted); United States v. Ahlers, 305 F.3d 54, 59-60 (1st Cir. 2002) ("It is accepted lore that when Congress uses certain words in one part of a statute, but omits them in another, an inquiring court should presume that this differential draftsmanship was deliberate."); 2A N. Singer, Sutherland Statutory Construction § 46:6 (6th ed. 2000).  Furthermore, "the FCC would not have needed to read an intercommunicating service requirement into Part B, as it did in the Advanced Services Order, if intercommunicating service already carried the same meaning as call

origination/termination." In re Intrado, Inc., No. 08-0545, 2009 WL 2589163, at *5 (Ill.

Commerce Comm'n Mar. 17, 2009) (footnote omitted).

As a final note on this issue, the court finds the following analysis by the Ohio PUC to be

particularly persuasive:

> We must note that there is a distinction between origination and
> intercommunication. We do not agree that intercommunication necessarily means
> that PSAPs must have the capacity to call potential 911 callers. We find that
> intercommunication exists where PSAPs and 911 callers can transmit and receive
> messages using the same facilities. Thus, even though a PSAP may not be
> positioned to initiate a call to an end user, a PSAP can intercommunicate with a
> caller after an end user initiates a call to the PSAP. We also find, based on the
> evidence, that PSAPs can intercommunicate, in the more traditional sense, with
> certain other PSAPs and emergency service providers. We thus find that
> Intrado's service provides intercommunication pursuant to the definition of
> telephone exchange service.

In re Intrado Commc'ns Inc., No. 07-1280-TP-ARB, 2009 WL 1759657, at *4 (Ohio Pub. Utils.

Comm'n June 17, 2009). Thus, the court concludes that Intrado's 911 service qualifies as

intercommunicating service under 47 U.S.C. § 153(47)(A).

b. Telephone Exchange

Part (A) of the definition of telephone exchange service also requires the service to occur

"within a telephone exchange, or within a connected system of telephone exchanges within the

same exchange area . . . ." 47 U.S.C. § 153(47)(A). This means that a service must be "local" in

nature, as opposed to a "toll" service. Compare 47 U.S.C. § 153(47) with 47 U.S.C. § 153(48)

(defining the terms "telephone exchange service" and "telephone toll service"); see also 47

U.S.C. § 153(26) (defining a provider of "telephone exchange service" as a "local exchange

carrier"). The FCC has explained that "[t]he concept of an exchange is "based on geography and

regulation, not equipment." Advanced Services Order, 15 FCC Rcd. at 395 ¶ 22 (citation

13

omitted) (quotation marks omitted).

With respect to this issue, the NCUC found that:

> "PSAPs must have a service that takes into account the location of fire, police, and other emergency service providers within the county that it serves. Although the reach of a particular 911 service may not coincide with the boundaries of ILEC exchanges, the service does have geographical limitations that are generally consistent with a community of interest."

RAO at 13 (quoting In re Intrado Commc'ns Inc., No. 07-1280-TP-ARB, 2009 WL 585861, at *13 (Ohio Pub. Utils. Comm'n Mar. 4, 2009)).

AT&T insists that it has never argued that "Intrado's service was required to match ILEC exchange boundaries." AT&T's Resp. Defs.' Mots. Summ. J. at 19. Rather, AT&T argues that "a connection between designated points (a PSAP, 911 caller, and first responder) is not equivalent to a local exchange area." Br. Supp. AT&T's Mot. Summ. J. at 18 (emphasis in original).

The court first notes that this argument was previously addressed with respect to the issue of intercommunication, see Section II.B.1.a., supra. Again, the court finds that AT&T's characterization of the nature of Intrado's 911 service is too narrow. As the above-quoted language from the NCUC's RAO suggests, depending on the nature of the call and the location of the incident being reported, a PSAP may actively choose to contact a particular police department if a crime is in progress or a fire department if such services are needed. Thus, the connections between the members of the community are not as static as AT&T suggests.

In addition, there is evidence in the record which demonstrates that Intrado's service is inherently local in nature. See Test. C.F. Spence-Lenss, DE # 25-43 at 42:7-9 ("Under a traditional end-to-end analysis, where a 911 call originates and where the call ultimately

terminates will be in close proximity.").  Thus, the court finds that Intrado's service satisfies the "geographic" element in the definition of telephone exchange service, and it does not matter, in this context, that it might on occasion also facilitate 911 calling to PSAPs outside the local exchange area.

            c.   Exchange Service Charge

Finally, to qualify as a telephone exchange service under 47 U.S.C. § 153(47)(A), Intrado's 911 service must be "covered by the exchange service charge."  The FCC has stated the following with respect to this requirement:

> [T]he "covered by the exchange service charge" clause comes into play only for the purposes of distinguishing whether or not a service is a local (telephone exchange) service, by virtue of being part of a "connected system of exchanges," and not a "toll" service.

Advanced Services Order, 15 FCC Rcd. at 398 ¶ 27; see also Directory Listing Order, 16 FCC Rcd. at 2745 ¶ 19.

Here, PSAPs and public safety agencies will pay a fee for Intrado's 911 service. However, AT&T argues that "because Intrado's PSAP customer does not communicate within the equivalent of an exchange area, any charge it pays for the service it receives is not an exchange service charge."  Br. Supp. AT&T's Mot. Summ. J. at 18 (citation omitted) (internal quotation marks omitted).  Because the court has already determined that Intrado's 911 service does in fact occur within a local exchange area, see Section II.B.1.b., supra, the court finds that the requirement of an exchange service charge has also been satisfied.

Thus, the court concludes that the NCUC did not err in determining that Intrado's 911 service constitutes telephone exchange service under 47 U.S.C. § 153(47)(A).

    2.  47 U.S.C. § 153(47)(B)

15

In order to satisfy the requirements of Part (B) of the definition of telephone exchange service, a carrier must provide "comparable service provided through a system of switches, transmission equipment, or other facilities (or combination thereof) by which a subscriber can originate and terminate a telecommunications service." 47 U.S.C. § 153(47)(B). Part (B) "was added to ensure that the definition of telephone exchange service was not limited to traditional voice telephony, but included non-traditional means of communication within a local calling area." Directory Listing Order, 16 FCC Rcd. at 2746 ¶ 21.

a. Call Origination and Termination

AT&T argues that Intrado's 911 service does not allow PSAP subscribers to make or "orginate" calls as required under 47 U.S.C. § 153(47)(B). After Intrado's PSAP customer receives an incoming 911 call, the PSAP can then transfer the call to another PSAP or to an emergency services provider. Mem. Supp. Intrado's Mot. Summ. J. at 13. The PSAP may also conference in a third party or another PSAP to the 911 call. Id. These capabilities are referred to as "hook flash." Id.; see also Intrado's Post-Hearing Br., DE # 25-51 at 14. AT&T maintains that a PSAP is not originating a call when it uses the hook flash feature. Rather, the PSAP is merely transferring a call that was originated by the 911 end user, who is not a customer of Intrado. See Br. Supp. AT&T's Mot. Summ. J. at 9-14; AT&T's Resp. Defs.' Mots. Summ. J. at 3-11. In addition, Intrado requires its PSAP customers to subscribe to the service of a different carrier for administrative purposes, for placing outgoing calls, and for receiving other calls. Br. Supp. AT&T's Mot. Summ. J. at 8. This is further proof, AT&T claims, that Intrado's service only permits PSAPs to receive and transfer incoming 911 calls.

In ruling on this issue, the NCUC again followed the reasoning of the Ohio PUC, which

noted that the Act does not quantify the term "originate." In re Intrado Commc'ns Inc., No. 07-1280-TP-ARB, 2009 WL 585861, at *13 (Ohio Pub. Utils. Comm'n Mar. 4, 2009). The Ohio PUC held that "the capability of a PSAP to call to another PSAP and engage in two-way communications with 911 callers satisfies the call origination and termination requirement." Id.; see RAO at 13.

Contrary to AT&T's assertions, the court finds that there is substantial evidence in the record to support the NCUC's finding that Intrado's PSAP customers will be able to originate calls. See Test. C.F. Spense-Lenss, DE # 25-43 at 40:4-7 ("[O]nce a 911 call is delivered over the one-way trunks to the PSAP, the PSAP may then 'hookflash' to obtain dial tone to originate a bridged call to a third party."); Test. T. Hicks, DE # 25-44 at 257:17-23 ("To say that [Intrado's service doesn't] provide the ability to dial out is not entirely true either because a party can – a PSAP customer – can transfer the call by hitting a hook flash and accessing a local dial tone line and can transfer calls that way. So there are ways for the [PSAP] to still generate the calls outward."). Thus, Intrado's PSAP subscribers will be capable of originating calls as needed for their specialized purposes.[10]

AT&T further disputes the evidence set forth above by arguing that the hook flash feature does not utilize a dial tone when a call transfer or conference is conducted. As a result, AT&T

---

[10] AT&T emphasizes that Intrado's own witness has admitted that the hook flash capability does not give PSAPs the ability to originate or make a call. See Test. C.F. Spence-Lenss, DE # 25-43 at 61:23-62:18. It appears that the NCUC was aware of the conflicting testimony from Ms. Spence-Lenss. See RAO at 9 ("On cross-examination, Intrado witness Spence-Lenss agreed that the service Intrado intends to provide is limited to aggregating emergency 911 calls at Intrado's selective router and then routing those calls to PSAPs, and it is not Intrado's intention to serve the end-users who place the 911 calls."). Here, however, it was the duty of the NCUC to make findings of fact and resolve any conflicts in the evidence. It is not the job of the court to second guess the NCUC's decision or to substitute its judgment for that of the agency. "[T]he Act does not require [the court] to sit as a super public utilities commission." GTE S., Inc. v. Morrison, 199 F.3d 733, 745 (4th Cir. 1999). Rather, it is the job of the court to determine whether the NCUC's decision is supported by substantial evidence. See AT & T Wireless PCS, Inc. v. City Council of Va. Beach, 155 F.3d 423, 430 (4th Cir. 1998).

contends that the hook flash capability does not result in a "new, second" call. AT&T's Resp. Defs.' Mots. Summ. J. at 9 (There is nothing in the record "to support the notion that the tone one hears when transferring a call indicates that a new, second call is being initiated."). However, even if the hook flash feature cannot obtain a traditional dial tone, this does not necessarily mean that Intrado's service does not allow subscribers to originate calls. In the Directory Listing Order, 16 FCC Rcd. at 2746 ¶ 21, the FCC clearly indicated that a dial tone is not needed in order to meet the origination requirement of 47 U.S.C. § 153(47)(B):

> Call completion offered by a [Directory Assistance] provider, while it may not take the form of an ordinary telephone call (*i.e.* one initiated by LEC provision of dial tone), nonetheless allows a local caller at his or her request to connect to another telephone subscriber thereby permitting a community of interconnected customers to make calls to one another.

(internal quotations omitted) (citation omitted).[11] Thus, it is clear that the FCC does not intend to limit telephone exchange service to traditional telephone services or technologies.

Furthermore, AT&T's arguments regarding this issue miss the bigger picture. The above-quoted passage from the Directory Listing Order indicates that in determining whether a service is capable of originating and terminating calls, the FCC has focused on the subscriber's ability to connect to other telephone customers. See also id., 16 FCC Rcd. at 2746 ¶ 20 ("Engaging in call completion allows a local caller to connect to another local telephone subscriber, and in that process, through a system of either owned or resold switches, enables the caller to originate and terminate a call.") (emphases added). Moreover, the FCC "traditionally has determined the nature of communications by looking to the end points of the communication, and has consistently rejected attempts to divide communications at any intermediate points of

---

[11]   A dial tone is also not necessary in order to meet the intercommunication requirement of 47 U.S.C. § 153(47). See id., 16 FCC Rcd. at 2745 ¶ 18.

switching or exchanges between carriers." <u>Advanced Services Order</u>, 15 FCC Rcd. at 391 ¶16.

Here, Intrado's service furnishes the connection between 911 end users and PSAPs, allowing

those parties to converse, and also adds the ability of Intrado's PSAPs to connect with a third-

party PSAP or with local emergency personnel so that all three may converse or for transfer of

the call. The court finds that, as a whole, this connection process demonstrates that Intrado's

service will provide for call origination and termination.

b. <u>Comparable Service</u>

To qualify as a telephone exchange service under 47 U.S.C. § 153(47)(B), a service must

also be "comparable" to other telephone exchange services. Although the term "comparable" is

not defined in the Act, the FCC has stated that the term means that the service at issue must

"retain the key characteristics and qualities of the telephone exchange service definition under

subparagraph (A) . . . ." <u>Advanced Services Order</u>, 15 FCC Rcd. at 399 ¶ 30. For example, even

though the term "intercommunicating service" is not expressly mentioned in 47 U.S.C.

§153(47)(B), the FCC has determined that the intercommunication requirement of Part (A) must

also be met under Part (B) of the definition of telephone exchange service. <u>Id.</u> None of the

parties dispute this. <u>See</u> Br. Supp. AT&T's Mot. Summ. J. at 6; Mem. Supp. Intrado's Mot.

Summ. J. at 11; NCUC's Reply Mem. at 6.

The court has already determined that Intrado's 911 service satisfies the

intercommunication requirement of 47 U.S.C. § 153(47)(A). <u>See</u> Section II.B.1.a., <u>supra</u>. For

the same reasons, the court finds that Intrado's service constitutes a "comparable service" for the

purposes of 47 U.S.C. § 153(47)(B). AT&T's argument to the contrary is simply a reiteration of

its argument that the call origination capability of Intrado's service is too limited to meet the

19

definition of telephone exchange service. For the reasons already discussed in Section II.B.2.a., supra, the court rejects AT&T's argument.

The court concludes that the NCUC did not err in determining that Intrado's 911 service constitutes telephone exchange service under 47 U.S.C. §153(47)(B). The court again notes that 47 U.S.C. § 153(47) is written in the disjunctive, so that Intrado's 911 service qualifies as telephone exchange service if it satisfies either part (A) or part (B) of the statute. Therefore, even if the court were to accept AT&T's argument that Intrado's 911 service does not permit call origination and termination under 47 U.S.C. § 153(47)(B), it still constitutes telephone exchange service under 47 U.S.C. § 153(47)(A).

In summary, the Act does not define the key terms at issue in this case, including the terms "intercommunicating service" and "originate." Furthermore, in both the Advanced Services Order and in the Directory Listing Order, the FCC's construction of the Act was limited to the specific facts before it at the time. These orders do not categorically circumscribe the types of telecommunications services that can meet the definition of telephone exchange service. Without clearer direction from Congress or the FCC on these matters, the court cannot say that the NCUC's conclusion that Intrado's 911 service qualifies as telephone exchange service under either part of 47 U.S.C. § 153(47) was in error.

The NCUC's determination that Intrado will provide telephone exchange service is also consistent with the fundamental principle of the Act that competitive local services should be encouraged, not discouraged. See, e.g., MCI Telecomms. Corp. v. BellSouth Telecomms., Inc., 40 F. Supp. 2d 416, 424 (E.D. Ky. 1999) ("The purpose of the Act is to create a vibrant competitive market that will bring lower prices and better service to consumers."); AT&T

Commc'ns of S. States, Inc. v. BellSouth Telecomms., Inc., 7 F. Supp. 2d 661, 663 (E.D.N.C. 1998). Finally, the court believes that the findings of the NCUC "deserve a measure of respect in view of the commission's experience, expertise, and the role that Congress has given it in the Telecommunications Act." BellSouth Telecomms., Inc. v. Sanford, 494 F.3d 439, 447 (4th Cir. 2007). Thus, the court concludes that the NCUC's decision meets the requirements of §§ 251 and 252 of the Act. See GTE S., Inc. v. Morrison, 199 F.3d 733, 742 (4th Cir. 1999).[12]

## III. CONCLUSION

For the foregoing reasons, AT&T's motion for summary judgment is DENIED. Intrado's motion for summary judgment and the NCUC's motion for summary judgment are GRANTED. Furthermore, the NCUC's 10 September 2009 Arbitration Order and the NCUC's 2 November 2009 approval order are AFFIRMED. The Clerk is directed to enter judgment for defendants and close this case.

This 10 December 2010.

_____
W. Earl Britt
Senior U.S. District Judge

---

[12] As a final matter, the court notes that both AT&T and Intrado have made various arguments regarding the tariffs that both parties have filed in other states in relation to their 911 services. Competitive carriers are not required to file tariffs in North Carolina. See Mem. Supp. Intrado's Mot. Summ. J. at 14 n.19; AT&T's Resp. Defs.' Mots. Summ. J. at 5. Thus, although they may be informative, the out-of-state tariffs are not determinative of any matter before the court.